Thomson", J.,
delivered the opinion of the court.
This was a suit in equity for a set-off of mutual judgments. The defendants had judgment, and the plaintiff brings error.
The cause was submitted to the trial court upon an agreéd statement of facts, substantially as follows: On March 20, 1888, the defendant Jessup sold to the plaintiff Whitehead all his shares of stock, and his entire interest, in The Colorado Insurance Company. In consideration of the sale Whitehead paid Jessup $375 in cash, and agreed to pay the further sum of $625 upon arrangements being made to place Whitehead in possession of the office of the company. The shares of stock which were sold were in the hands of a third party, and the money was paid to Jessup upon his promise that he would not pay it over to the party holding the stock without obtaining possession of it, and that, having received it, he would immediately deliver it to Whitehead. Jessup paid the money, but failed to obtain the stock on account of some claim of title made by the holder. The stock never was delivered to Whitehead. Afterwards Whitehead instituted criminal proceedings against Jessup on account of the transaction, in which the defendant Williams was Jessup’s attorney. The proceeding resulted in favor of Jessup, and he was discharged. He then commenced an action against Whitehead for malicious prosecution, and on June 6,1888, recovered judgment for $350. This suit was conducted for Jessup by Williams, as his attorney. Whitehead appealed from the judgment to the supreme court, from which the *462 case was transferred to this court, and the judgment was by this court affirmed at its April term, 1892. Whitehead v. Jessup, 2 Colo. App. 76. While the cause was pending on appeal Whitehead brought suit against Jessup to recover the money advanced on the sale, with interest, and on February IS, 1890, recovered judgment for $441 and costs. At the time Jessup recovered his judgment he was insolvent, and remained insolvent. On June 9,1888, three days after the rendition of the judgment against Whitehead in the suit for malicious prosecution, Jessup assigned the judgment to the defendant Williams. Jessup was indebted to Williams for defending him in the criminal suit, and also for the management of the action against Whitehead for malicious prosecution. After the recovery of judgment in the latter case, Jessup inquired of Williams what was his charge for his services. Williams replied that they were worth at least one fourth of the judgment. Williams at first “filed a lien” for his services, and an appeal being threatened by Whitehead, and Jessup alleging that he was unable to follow the case into the appellate court, it was agreed that he should assign the judgment absolutely to Williams in consideration of the former services of Williams, and in further consideration that he should defend the appeal and make the outlay of money necessary to the proper presentation of the case in Jessup’s behalf in the appellate court. Accordingly the judgment was assigned to Williams, and he paid Jessup’s docket fee in the supreme court, prepared Jessup’s brief and paid for printing it, and gave his personal attention to the case. There was no fraudulent intent in the assignment, on the part of either Williams or Jessup, but Williams took it with full knowledge of the transaction between Whitehead and Jessup, although he did not know what course Whitehead would pursue in the assertion of his rights.
No exception was preserved to the judgment in this case, and it is contended on behalf of the defendants that for that reason it cannot be reviewed in this court. Where a cause has been tried without a jury, upon evidence heard, an ex *463 ception to the judgment is necessary to enable the appellate court to review it upon the evidence; that is, to pass upon the question whether the evidence is sufficient to sustain it. Phelps v. Spruance, 1 Colo. 414; Atkinson v. Atkinson, 2 Colo. 381; Patton v. Ten Broeke C. M. Co., 3 Colo. 265; Law v. Brinker, 6 Colo. 555; Poire v. R. M. Trans. Co., 1 Colo. 589. But this rule is applicable only where the facts are in dispute, and the correctness of the finding of the court upon the evidence is brought in question. Where the facts are agreed upon, and there is therefore no question of fact for the court to decide, an exception to the judgment is unnecessary. Clayton v. Smith, 1 Colo. 95; Greorge v. Tufts, 5 Colo. 162.
In Lindsay v. Jackson, 2 Paige Ch. 581, Chancellor Walworth said, “There is a natural equity that cross demands should be offset against each other.” The doctrine of set-off is of equitable origin, and was acted upon by courts of equity before the enactment of any statute permitting set-offs, in cases where one of the parties was insolvent, and the other was therefore unable otherwise to obtain satisfaction of his demand. After the enactment of the statute, courts of law, by virtue of their authority over their suitors, and proceeding upon the equity of the statute rvhere the case was not within its letter, upon an application made for that purpose, directed the set-off of mutual judgments against each other. Brown v. Hendrickson, 39 N. J. Law, 239; Simson v. Hart, 14 Johns. 63. The jurisdiction of courts of law, derived from the statute, to set off judgments against each other, does not, however, divest courts of equity of their jurisdiction in such cases. Courts of law exercise the jurisdiction upon summary application, and courts of equity upon motion, or upon bill filed. Where the proceeding is by an application to a court of law, or a motion to a court of equity, the right to a set-off does not exist unless both demands have been reduced to judgment. A mere indebtedness cannot be set off against a judgment. But it is otherwise in equity, in an original proceeding instituted for the purpose, where there *464 are grounds for the exercise of equitable jurisdiction. Lindsay v. Jackson, supra ; Gay v. Gay, 10 Paige Ch. 369 ; Pignolet v. Geer, 1 Rob. (N. Y.) 626 ; Marshall v. Cooper, 43 Md. 46; Levy v. Steinbach, 43 Md. 212.
In Gay v. Gay, the chancellor said: “ The right to set off one judgment or decree against another, by a motion to this court, or by a summary application to the equitable powers of a court of law, only exists in those cases where the debts on both sides had been finally liquidated, by judgment or decree, before the assignment of either to a third party. * * * Upon a bill filed in this court for a set-off, the right of set-off does not always depend upon the statute, nor upon the question whether both demands, are liquidated by judgment or decree. But if an equitable right of set-off exists, while the parties have mutual demands against each other, because the debt due to the party claiming the set-off is so situated that it is impossible for him to obtain satisfaction of such debt by an ordinary suit at law, or in equity, to recover the same, this court, upon a bill filed, will compel an equitable set-off of one debt against the other. And the insolvency of the party against whom the set-off is claimed is a sufficient ground for the exercise of the jurisdiction of a court of chancery, in allowing a set-off in cases not provided for by the statute, although the demands on both sides are not liquidated by judgment, or decree, so as to authorize a set-off upon a summary application, by motion.”
In this case, if there had been no assignment of the Jessup judgment to Williams, it is manifest that there would have been no impediment to the allowance of the set-off as prayed. On the other hand, if the record showed nothing further than the recovery of the judgments and the assignment to Williams, it is equally manifest that the set-off could not be allowed, because Williams was not a debtor of Whitehead, and Whitehead’s judgment was recovered a considerable time after Williams became the owner of Jessup’s judgment. But before Jessup recovered his judgment, Whitehead had a cause of action against him for the money advanced upon *465 the purchase. Jessup was unable to deliver what he had sold, and therefore owed Whitehead the amount which the latter had paid him -on the faith of his title to the property, and his ability to make delivery of it. It is perhaps true that Whitehead might have brought his action for breach of the contract of sale, and recovered damages which would not necessarily be measured by the money advanced; but the only claim which he asserted was for the return of his money with interest, and this claim was a subsisting demand against Jessup at the time the latter recovered his judgment. The demand was not in the nature of unliquidated damages; it was as definite and certain as if it had been evidenced by a promissory note. Whitehead could not make it a set-off in the suit by Jessup, because that suit was for a tort. A debt cannot be set off against a claim for damages growing out of a wrong. After Jessup’s judgment was recovered, Whitehead’s demand was still unavailable at law as a set-off. It must be reduced to judgment first. But the moment Jessup recovered his judgment, Whitehead’s right in equity to offset it by the debt owing to him attached. By reason of Jessup’s insolvency, the demand of Whitehead could not be otherwise satisfied, and upon this ground equity would at that time have entertained jurisdiction to set off the demand against the judgment, in so far as they would balance each other. It is the same demand, in the form of a judgment, that is involved in this suit.
The position occupied by Williams in this case is that of assignee of the judgment. When he took the assignment, Whitehead’s claim was a subsisting demand, and the judgment passed to Williams subject to Whitehead’s right of set-off. In Ward v. Whitaker, 6 Mich. 133, the court said : “No rule is better settled than that the assignee of a chose in action takes it subject to all equities existing between the debtor and creditor. It is not necessary that the equities should exist at the inception of the debt or contract. It is sufficient they exist prior to the assignment; for the reason of the rule is as applicable -to one case as the other; which *466 is, that the assignee has it in his power to protect himself against them by inquiry of the debtor before the assignment.” The following is from the opinion in Brown v. Hendrickson, supra: “Nor will the general doctrine be controverted, that where, at the time of the assignment of a chose in action, an equitable right of set-off exists against the assignoi', the assignee takes the chose in action subject to such right of set-off, even though he is without knowledge of its existence. No reason appears why the assignee of a judgment should be held to occupy a position superior to that of the assignee of any other chose in action, whereby he may take it free from existing equities, and withdraw it from the operation of a set-off, which in the absence of such transfer, would, without question, be enforced.” See, also, Levy v. Steinbach, supra.
The question of notice, however, is not in this case, because Williams admits that he took the assignment with full knowledge of the transaction between Whitehead and Jessup.
Williams was Jessup’s attorney in the litigation growing out of the transaction between Jessup and Whitehead, and the assignment was made in consideration of his services as attorney, and his payment of the expenses rendered necessary by the appeal. It is suggested that these facts impress upon the assignment a character different from that which it would have if it had been made to a stranger, and that by reason of Williams’ relation to the litigation, there is some superior equity in him entitling him to a consideration which could not be accorded to an ordinary assignee. Williams says that he first “ filed a lien ” on the judgment. The statute makes no provision for filing a lien. It gives an attorney a lien for his services upon a judgment recovered by him, which, without the preliminary execution or filing of any paper, is valid against the judgment plaintiff; but the only method provided for the formal assertion of the lien is a suit for its enforcement. But if Williams had relied upon his lien, and followed it with the proper proceedings to make it available, we do not think it could have been asserted against White *467 head. In Nicoll v. Nicoll, 16 Wend. 445, it was decided that the lien of an attorney is not available against a party proceeding by a bill in chancery to obtain a set-off against a judgment, on a cross demand existing when the judgment was rendered. See, also, Marshall v. Cooper, supra, where the question is discussed.
But the question of the effect of an attorney’s lien is not before us. Williams never took the steps necessary to make his lien effective. He abandoned it by taking an assignment of the judgment to himself, and is now claiming, not a right to a certain amount out of the judgment in payment for his services, but the absolute ownership of the entire judgment. He has relinquished whatever equities he might have been entitled to by virtue of his lien, and his position in this proceeding is simply that of assignee.
It appears that Williams paid the expenses necessary in defending against the appeal. He is entitled to have these refunded to him. It would be inequitable to embrace them in the set-off. The judgment will be reversed with instructions to decree the set-off so as to cancel Jessup’s judgment and apply its amount as a credit on the judgment of Whitehead, leaving the unpaid balance of the latter judgment to be collected by the ordinary legal methods, and providing for the payment by Whitehead of the costs expended by Williams on account of the appeal.

Reversed.